## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JEREMY WEATHERSPOON,<br>　　Plaintiff, | )<br>)<br>) |
| v. | )<br>)　　CIVIL ACTION NO. 1:20-00075-N<br>) |
| KILOLO KIJAKAZI, *Acting*<br>*Commissioner of Social Security*,[1]<br>　　Defendant. | )<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeremy Weatherspoon brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon due

---

[1] As has been called to the Court's attention in other cases, Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. *See* https://www.ssa.gov/org/coss.htm; https://www.reuters.com/world/us/biden-fires-social-security-commissioner-2021-07-09/ (last visited Sept. 14, 2021). Accordingly, Kijakazi is automatically substituted for Andrew Saul as the defendant in this action under Federal Rule of Civil Procedure 25(d), and this action continues unabated. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title and docket of this case accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)."

consideration of the parties' briefs (Docs. 16, 17) and those portions of the transcript of the administrative record (Doc. 15) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further administrative proceedings.[3]

## I.    *Procedural Background*

Weatherspoon filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on January 12, 2017. After they were initially denied, Weatherspoon requested, and on July 9, 2018, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On January 31, 2019, the ALJ issued an unfavorable decision on Weatherspoon's applications, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 15, PageID.70-81).

The Commissioner's decision on Weatherspoon's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on December 13, 2019. (*Id.*, PageID.46-51). Weatherspoon subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a

---

*Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20).

hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant

evidence as a reasonable mind might accept as adequate to support a
conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See
*Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143
(1999) (comparing the substantial-evidence standard to the deferential
clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the
facts anew, reweigh the evidence, or substitute our judgment for that of the
[Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d
1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v.
Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates
against the [Commissioner]'s factual findings, [the Court] must affirm if the decision
reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting
*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). *See also Hunter v. Soc. Sec.
Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the
evidence is not required. In determining whether substantial evidence supports a
decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look
at the evidence presented to [an administrative agency] to determine if
interpretations of the evidence other than that made by the [agency] are possible.
Rather, we review the evidence that was presented to determine if the findings made
by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential
and we consider only whether there is substantial evidence for the findings made by
the [agency], *not* whether there is substantial evidence for some *other* finding that

could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

before us. Rather, our function is to ensure that the decision was based on a

reasonable and consistently applied standard, and was carefully considered in light

of all the relevant facts.").[5]

---

[5] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam)

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.,* *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been

---

(unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921

(11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB and SSI requires a showing that the claimant is under a disability, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), which means that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full

and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new

evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Weatherspoon met the applicable insured status requirements through December 31, 2019, and that he had not engaged in substantial gainful activity since the alleged disability onset date of June 1, 2016.[8] (Doc. 15, PageID.75). At Step Two,[9] the ALJ determined that Weatherspoon had the following severe impairments: neurofibromatosis, and a seizure disorder.

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

(Doc. 15, PageID.75). At Step Three,[10] the ALJ found that Weatherspoon did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 15, PageID.75-76).

At Step Four,[11] the ALJ determined that Weatherspoon had the residual

---

[10] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[11] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

functional capacity (RFC) "to perform a full range of work at all exertional levels[12] but with the following nonexertional limitations: he should not climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs[; h]e can frequently balance, stoop, kneel, crouch and crawl[; h]e should have no exposure to unprotected heights, hazardous machinery or large bodies of water[; and h]e cannot operate motor vehicles." (Doc. 15, PageID.76-79).

Based on the RFC and the testimony of a vocational expert,[13] the ALJ determined that Weatherspoon could perform past relevant work as a janitor, fast food cook, and kitchen manager. (Doc. 15, PageID.79). However, as an alternative finding, the ALJ proceeded to Step Five and, after considering additional testimony from the vocational expert, found that there existed a significant number of jobs in

---

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "very heavy" work are as follows:

> Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. §§ 404.1567(e), 416.967(e).

[13] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

the national economy as a dishwasher, laundry worker I, and food prep worker that Weatherspoon could also perform given his RFC, age, education, and work experience. (*Id.*, PageID.79-80). Thus, the ALJ found that Weatherspoon was not disabled under the Social Security Act. (*Id.*, PageID.80-81).

## IV.   *Analysis*

### a.   **Medical Opinions**

Weatherspoon argues that the ALJ reversibly erred in giving less than substantial or significant weight to the medical opinions of two physicians, Andrew Manley, M.D. and Stephen Winston, M.D. Upon due consideration, the undersigned agrees that reversible error has been shown with regard to the ALJ's consideration of Dr. Winston's opinion.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including

(1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished); *accord Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 751 (11th Cir. 2018) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.[14]

An ALJ "may not arbitrarily reject uncontroverted medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), or "substitute[] his judgment of the claimant's condition for that of the medical and vocational experts." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam). "But ALJs are permitted, and in fact required, to use judgment in weighing competing evidence and

---

[14] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Weatherspoon's applications. *Compare* 20 C.F.R. §§ 404.1520c, 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017).

reaching a final determination as to whether an applicant is disabled." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 n.1 (11th Cir. 2020) (per curiam) (unpublished). The opinions of non-treating physicians "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord, e.g.*, *Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight."). On the other hand, "[t]he opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

The ALJ gave "only partial weight" to the medical opinions of treating physician Dr. Manley, explaining as follows:

> [Dr. Manley] reported claimant should be considered for disability benefits due to uncontrolled partial complex and generalized tonic clonic seizures. He indicated claimant has a long term disease process which causes many neurological and cognitive abnormalities. He noted claimant reported daily seizures despite two medications. Dr. Manley does not address the effectiveness of medication in controlling the claimant's seizures. His treatment notes indicate seizures have been controlled at times, and there is no persuasive evidence establishing they are not amenable to continued control. His opinion does not address specific residual functional limitations and is inconsistent with his office notes indicating he released claimant to light duty work at the fire department with no further recommendations except to avoid dangerous activity until he is seizure free for six months (Exhibit 5F/8). He noted the neurofibromatosis diagnosis puts claimant at risk for seizures and other serious debilities, but this opinion is speculative regarding the possible future implications of claimant's neurofibromatosis diagnosis, so it is premature in that regard. The record evidence does not establish any specific functional limitation related to neurofibromatosis at this time, except customary seizure precautions.

(Doc. 15, PageID.78).

As for Dr. Winston, the ALJ summarized his notes as follows:

> The claimant presented to [Dr.] Winston … on October 16, 2017 to establish care. He stated he was taking Tripletal 600 mg. Examination was essentially normal. The claimant did report pain in his back. Dr. Winston's diagnosis was unspecified convulsions and Neurofibromatosis, type 1. He recommended considering Gabapentin. He advised the claimant to do no driving and to look into assistance with Tripletal. He noted he told the claimant to pursue disability. In a letter dated October 30, 2017, Dr. Winston stated the claimant is known to have tumors in both his skin and in his abdomen, chest wall, and brain. He stated the claimant was having poorly controlled seizures due to neurofibromatosis. He stated the claimant is unemployable and he recommended he seek disability…

(Doc. 15, PageID.77).

The ALJ assigned "little weight" to the "report" from Dr. Winston, explaining: "While he stated he had treated the claimant since he was a child, there are no records documenting treatment during the relevant period. On October 16, 2017, his note reads the claimant was there to establish care. There is no evidence that he presented for additional treatment with Dr. Winston after that date. Moreover, Dr. Winston did not describe limitations in functional terms." (*Id.*).

The undersigned finds harmless any error in the ALJ's statements as to the weight given to Dr. Manley's opinions and the reasons therefore, as the ALJ nevertheless accounted for the specific limitations imposed by Dr. Manley in the RFC.[15] The ALJ correctly noted that Dr. Manley's assessments did not provide much

---

[15] "A harmless error—that is, one that does not affect the ALJ's ultimate decision— does not constitute a ground for reversal." *Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) (per curiam) (unpublished) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("We find that the ALJ made erroneous statements of fact, but we conclude that this was harmless error in the context of this case and that the ALJ applied the proper legal standard when considering the vocational factors.")). The Eleventh Circuit Court of Appeals has found harmless error in the ALJ's failure to consider medical opinions where the ALJ's decision was nevertheless consistent with, or even more restrictive than, the overlooked opinions. *See Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 869 (11th Cir. 2016) (per curiam) (unpublished) ("[T]he ALJ's RFC determination found Baez's capacities to be more limited than Dr. Krishnamurthy's assessment, rendering harmless any error in failing to discuss or assign weight to the opinion."); *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 824– 25 (11th Cir. 2017) (per curiam) (unpublished) ("To the extent these reports qualified as medical opinions, the ALJ erred by failing to specify the weight assigned to them … Nonetheless, any error by the ALJ in failing to specify weight was harmless. See, e.g., Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007) ('[The] failure to explicitly state how much weight the ALJ was providing such observations is harmless ... because the ALJ's opinion is completely consistent with such observations'); Schomas v. Colvin, 732 F.3d 702, 707 (7th Cir. 2013) (applying harmless error review to an ALJ's failure to specify why controlling weight was given to one opinion); Keyes–

in the way of specific functional limitations. The only specific limitations Dr. Manley opined were that Weatherspoon should not drive or do dangerous activity until he was 6 months seizure free. (Doc. 15, PageID.358, 367, 372, 375).[16] The ALJ appears to have agreed with those limitations, as the RFC stated that Weatherspoon "should not climb ladders, ropes or scaffolds[,]" should only "occasionally climb ramps and stairs[,]" "should have no exposure to unprotected heights, hazardous machinery or large bodies of water[,]" and "cannot operate motor vehicles." (Doc. 15, PageID.76).

Otherwise, Dr. Manley's opinions consisted of general statements that

---

Zachary v. Astrue, 695 F.3d 1156, 1165 (10th Cir. 2012) ('Any error in failing to specify the weight given to the opinion was harmless').").

[16]      As the ALJ noted, Dr. Manley did release Weatherspoon to light duty at the fire department. However, the ALJ committed no err in not interpreting that provision as restricting Weatherspoon to "light work" as that provision is defined in the Social Security regulations. Dr. Manley's note did not elaborate on what he meant by "light duty," and examining that phrase in context does not bolster the conclusion that it is equivalent to "light work" for Social Security disability purposes. In imposing this condition, Dr. Manley stated: "I have cleared him for light duty at the fire department. He should avoid dangerous activity until 6 months seizure free." (Doc. 15, PageID.358). A reasonable interpretation of this statement is that the restriction to light duty was premise entirely on Weatherspoon's restriction from engaging in dangerous activity until he had been seizure free for a sufficient period. Because, as noted, the RFC restricted Weatherspoon from operating hazardous machinery and performing many other dangerous activities, this would appear to account for the "light duty" restriction imposed by Dr. Manley. "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." Edlund, 253 F.3d at 1156.

Weatherspoon also challenges the ALJ's rejecting as "speculative" and "premature" Dr. Manley's opinion that Weatherspoon's neurofibromatosis diagnosis put him at risk for seizures and other serious debilites, but the ALJ did not err in that regard. Whatever the future implications of that diagnosis, there is no indication that it resulted in any additional limitations on Weatherspoon's ability to work during the adjudicatory period relevant to the ALJ's decision on his present applications, which ended on the date the ALJ issued her decision.

Weatherspoon was incapable of performing sustained work activity, and should be considered and/or qualify for disability because of his impairments. (*See id.*, PageID.318 ("Mr. Weatherspoon's health issues and their effect on his daily life and potential employment should be considered for disability benefits."), 363 ("With his uncontrolled seiuzres [sic] and NF1, it is my opinion that he should be considered and should be approved for disability."), 367 ("I believe that this patient should be considered for long term disability coverage."), 372 ("His seizures keep him from driving or being able to perform sustained work activity."), 375 ("I recommend he be placed on disability for NF1 and uncontrolled seizures. I will write a letter for him stating he can no [sic] sustain work due to his seizures."), 376 ("Mr. Weatherspoon's health issues and their effect on his daily life and greatly diminish his ability to maintain sustained work activity."). However, such statements are opinions on issues reserved to the Commissioner, rather than medical opinions, and are not due "any special significance" on the issue of whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1527(d), 416.927(d). *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level … , the administrative law judge … is responsible for assessing your residual functional capacity."). Accordingly, no reversible error has been shown in the ALJ's consideration of Dr. Manley's opinions.

However, the same cannot be said of the ALJ's consideration of Dr. Winston's opinion. Regardless of whether Dr. Winston also should have been considered a

treating physician,[17] the ALJ's stated reasons for rejecting his medical opinion are insufficient, and this Court cannot affirm the ALJ's decision in that regard "simply because some rationale might have supported the ALJ's conclusion." *Winschel*, 631 F.3d at 1179 (quotation omitted). The ALJ gave only two reasons for assigning "little weight" to Dr. Winston's opinion: (1) there was no medical evidence in the record documenting treatment either before or after Weatherspoon's October 16, 2017 examination, and (2) "Dr. Winston did not describe limitations in functional terms." (Doc. 15, PageID.78). As to the first reason, the lack of other treatment evidence from Dr. Winston does not eliminate the fact that Dr. Winston examined Weatherspoon at

---

[17]    Weatherspoon argues that Dr. Winston should have been considered a treating physician, pointing to Dr. Winston's statement that Weatherspoon "has been a patient of mine since he was a child." (Doc. 15, PageID.371). The ALJ disagreed due to a lack of objective medical evidence establishing such a relationship, *see* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (for a medical source to be considered "treating," a claimant must generally show he "has, or has had, an ongoing treatment relationship with" the source, meaning that "the medical evidence establishes that [the claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)"), correctly noting that, at the time of her decision, the only medical notes in the record from Dr. Winston were from his October 16, 2017 examination of Weatherspoon, which noted that he was being seen "as a new patient." (Doc. 15, PageID.369).

As the Commissioner's brief notes, Weatherspoon did submit additional treatment records from Dr. Winston to the Appeals Council in requesting review of the ALJ's decision. However, Weatherspoon does not challenge the Appeals Council's consideration of that new evidence, and "when the [Appeals Council] has denied review, [a court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge*, 150 F.3d at 1323.

Nevertheless, the undersigned finds it unnecessary to determine whether the ALJ erred in determining that Dr. Winston was not a treating source. Even if Dr. Winston was properly deemed a non-treating source, the ALJ still failed to articulate sufficient reasons for rejecting his medical opinion.

least once. The Social Security regulations expressly contemplate that one-time examining and even non-examining medical sources, in addition to treating sources, may provide medical opinions, and those opinions must still be addressed and weighed "with particularity." *Winschel*, 631 F.3d at 1179. Thus, the simple fact that, in the ALJ's view, Dr. Winston was not a treating source was not valid grounds for wholly rejecting his opinion.

As for the second reason, the undersigned disagrees that Dr. Winston failed to describe any limitations "in functional terms." In order for a medical source's statement to constitute a medical opinion, it must "reflect judgments about the nature and severity of [a claimant's] impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1), 416.927(a)(1). While Dr. Winston's report did include statements on issues reserved to the Commissioner that the ALJ was not required to give any special significance—that Weatherspoon was "unemployable" and should seek "disability if possible" (Doc. 15, PageID.370-371)—he also opined that Weatherspoon "cannot drive" and "cannot even use an oven, stove or shower w/o the presence of someone to help him in case of a seizure." (Doc. 15, PageID.370). These are clearly statements about what Weatherspoon "can still do despite impairment(s)[,]" described "in functional terms."

Moreover, the undersigned cannot conclude that the ALJ's failure to articulate sufficient reasons to reject Dr. Winston's opinion is completely harmless. As noted above, the ALJ already accounted for Weatherspoon's inability to drive in the RFC,

so any rejection of Dr. Winston's opinion in that regard is harmless. However, while the ALJ did restrict Weatherspoon from any "exposure to unprotected heights, hazardous machinery or large bodies of water[,]" Dr. Winston's opinion that Weatherspoon cannot even use an oven, stove, or shower without someone being present in case of seizure, if accepted, could call into doubt Weatherspoon's ability to perform the jobs the ALJ found he could do at both Step Four—janitor, fast food cook, and kitchen manager—and the alternate Step Five—dishwasher, laundry worker I, and food prep worker. Accordingly, reversible error has been shown in the ALJ's consideration of Dr. Winston's medical opinion.

Weatherspoon requests that the Commissioner's decision be reversed with a finding by this Court that he is disabled, and only requests in the alternative a remand to the Commissioner for further proceedings. (Doc. 16, PageID.389). The Eleventh Circuit has recognized that reversal with remand to the Commissioner for further proceedings is generally warranted where, as here, "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.*, Weatherspoon has failed to convince the undersigned that this standard is met here.[18]

---

[18] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts … The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand

Moreover, the United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). *See also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of

---

for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

judicial review, the courts are then to respect the administrative determination.").

Accordingly, the Commissioner's final decision denying Weatherspoon's applications for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.[19]

---

[19]    Weatherspoon also argues the ALJ erred in giving "great weight" to the medical opinion of a non-examining physician, state agency reviewing consultant Dr. March, on the basis that Dr. March did not have the benefit of the medical evidence generated after his opinion was rendered on February 16, 2017. However, ALJs are required to consider the opinions of state agency consultants just as they would any other medical opinion, *see* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1), which included determining its consistency with the record as a whole, *see id.* §§ 404.1527(c)(4), 416.927(c)(4). Thus, the simple fact that Dr. March did not have the benefit of the entire record when he rendered his opinion did not preclude the ALJ from affording his opinion great weight if the record as a whole supported it.

Nevertheless, because the ALJ did not properly reject the opinion of Dr. Winston, who is at least an examining physician, the undersigned cannot affirm the ALJ's decision based on her giving great weight to Dr. March's opinion, which appears to be less restrictive than Dr. Winston's in some respects. This is because "[t]he opinions of nonexamining, reviewing physicians, … when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam).

The undersigned expresses no view on what weight any medical opinion or subjective testimony should be assigned on remand, as the responsibility for weighing evidence is generally committed to the Commissioner. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly."). The undersigned's conclusion that the ALJ articulated insufficient grounds for rejecting Dr. Winston's opinion does not foreclose the possibility that the Commissioner could articulate sufficient grounds supported by substantial evidence on remand. Moreover, the Commissioner's weighing of the other medical opinions, and credibility findings as to the testimony of Weatherspoon and his mother, could change depending on what weight the ALJ assigns Dr. Winston's opinion on remand. Accordingly, the undersigned declines to address Weatherspoon's additional claims that Dr. March's opinion was inconsistent with the record, and that the ALJ erred in discounting the testimony of Weatherspoon and his mother. This should not hamper effective appellate review of this decision, if

### b.    Inability to Afford Treatment

In passing, Weatherspoon alludes to his lack of medical insurance and inability to otherwise afford adequate seizure treatment, and appears to suggest that the ALJ did not adequately take these considerations into account in finding that Weatherspoon was not disabled. As Weatherspoon's arguments on this point are perfunctory and lacking in citation to authority, and given the finding of other reversible error as explained above, the undersigned need not and does not decide if the ALJ also committed reversible error in this regard. Nevertheless, some aspects of the ALJ's decision give the undersigned pause.

The ALJ noted Weatherspoon reported on October 10, 2017, "that he had not had any seizures since starting Depakote on February 11, 2017[,]" and reported again on June 20, 2018, that "he thought he had good control of the seizures with Depakote." (Doc. 15, PageID.77). However, the ALJ later noted that Weatherspoon "had difficulty affording his medication and transitioned to Tegretol…" (*Id*.). The ALJ further noted that Weatherspoon's "medications were later changed to Keppra and Tripleptal, which he was taking at the time of the [ALJ] hearing." (*Id*.).

The ALJ found that "[a]lthough a treating physician noted [Weatherspoon's] seizure disorder was intractable, … the treatment records do not establish that [Weatherspoon]'s seizures are not controlled or amenable to control with proper use of prescribed medication." (*Id*., PageID.77-78). However, the ALJ only found that

---

any. *See Henry*, 802 F.3d at 1267 ("Our review is the same as that of the district court, meaning we neither defer to nor consider any errors in the district court's opinion…" (citation and quotation omitted)).

Weatherspoon "had no generalized tonic clonic seizures *after starting Depakote*…" (*Id.*, PageID.77). The ALJ made no similar finding regarding the effectiveness of the other seizure medications Weatherspoon took after transitioning from Depakote, and both Dr. Manley and Dr. Winston's notes suggest that they were not very effective in controlling his seizures.

"A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling. In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (citations and quotation omitted). However, while " 'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,' … 'poverty excuses noncompliance.' " *Ellison*, 355 F.3d at 1275 (quoting *Dawkins*, 848 F.2d at 1213). "'To a poor person, a medicine that he cannot afford to buy does not exist[.]' " *Dawkins*, 848 F.2d at 1213 (alteration added) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)). Thus, "when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison*, 355 F.3d at 1275 (citing *Dawkins*, 848 F.2d at 1214). If the ALJ finds that a claimant "cannot afford the prescribed treatment," then the claimant "is

excused from not complying and … is entitled to benefits" if he is otherwise determined disabled. *Dawkins*, 848 F.2d at 1214.

Here, the ALJ's Step Four finding appears to have hinged significantly on her determination that Weatherspoon's seizures were controlled when medication was properly used. However, the ALJ only expressly found that Weatherspoon's seizures were controlled by use of Depakote, which the ALJ herself noted Weatherspoon "had difficulty affording…" (Doc. 15, PageID.77). This financial difficulty appears to have resulted in Weatherspoon transitioning to other medications, whose efficacy the ALJ did not discuss. As the only prescribed treatment the ALJ expressly found to be effective was the use of a medication that Weatherspoon was noted to have difficulty affording, the ALJ was required to consider whether Weatherspoon's poverty excused him from taking that medication. This the ALJ did not do.

Again, the undersigned makes no determination whether the foregoing constitutes additional reversible error. Nevertheless, the Commissioner is encouraged to consider these additional concerns on remand.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Weatherspoon's January 12, 2017 DIB and SSI applications is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Weatherspoon a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see*

*Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Weatherspoon's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Weatherspoon be awarded benefits on the subject applications following this remand.[20] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 14th day of September 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[20] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").